**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JONATHAN FELIZ,                                          :

                     Petitioner,         :

      -against-                                   :

UNITED STATES OF AMERICA,                      :

                  Respondent.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>

16 Civ. 4449 (GBD)
9 Crim. 195–2 (GBD)

GEORGE B. DANIELS, United States District Judge:

In 2013, Petitioner Jonathan Feliz was sentenced by this Court to an aggregate term of thirty years' imprisonment on two firearms offenses. (ECF No. 711, at 1–2.)[1] Feliz's crimes stemmed from his involvement with the so-called "Washington Heights Marijuana Organization," a street gang whose members engage in, among other activities, narcotics trafficking, murder, and attempted murder. (Superseding Indictment S10 09 Cr. 195, ECF No. 363, at 1–2.) Pursuant to a plea agreement, the charges against Feliz were ultimately reduced to two: first, use and carry of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A) ("Count One"), for which he received a mandatory five years' imprisonment; and second, use, carry, and discharge of a firearm during a "crime of violence" in violation of 18 U.S.C. § 924(c)(1)(A)(iii) ("Count Two"), for which he received a mandatory consecutive twenty-five years' imprisonment.[2] (Plea Agreement at 1; ECF No. 711, at 1–2.) Pursuant to 28 U.S.C. § 2255, Feliz now seeks a

---

[1] Unless otherwise noted, all citations to the record refer to docket entries in Feliz's criminal case, *United States of America v. Jonathan Feliz*, No. 09 Crim. 195–2 (GBD) (S.D.N.Y.).

[2] 18 U.S.C. § 924(c)(1)(A)(i)—the statute predicating Feliz's Count One conviction—mandates a minimum term of five years' imprisonment that must be served consecutively to any other term of imprisonment imposed. Because Feliz's Count Two conviction constituted a second conviction under Section 924(c), it carried a mandatory minimum term of twenty-five years' imprisonment, also to be served consecutively to any other term of imprisonment imposed. *See* 18 U.S.C. § 924 (c)(1)(C)(i).

vacatur of his Count Two conviction and its corresponding twenty-five-year sentence. (Mot. to Vacate, ECF No. 968.)

The basis for Feliz's petition is the Supreme Court's recent determination in *United States v. Davis*, 139 S. Ct. 2319 (2019) that the residual clause in Section 924(c)'s definition of "crime of violence" is unconstitutionally vague. After *Davis*, an offense only constitutes a "crime of violence" upon which a Section 924(c) conviction may be predicated if the offense satisfies the statute's "elements clause," which requires the offense to have "as an element[,] the use, attempted use, or threatened use of physical force against the person or property of another." *Davis*, 139 S. Ct. at 2324; *see* 18 U.S.C. § 924(c)(3)(A). According to Feliz, the predicate offense on which he says his Count Two conviction was based—conspiracy to commit murder—does not meet the elements clause definition of "crime of violence," and his conviction must therefore be vacated.

The Government agrees that the residual clause of Section 924(c)'s definition of "crime of violence"—Section 924(c)(3)(B)—is unconstitutionally vague in light of *Davis.* (Mem. of Law in Opp. to Mot. to Vacate ("Opp."), ECF No. 1016, at 1.) The Government also agrees with Feliz that conspiracy to commit murder is not a "crime of violence" as that term is defined by Section 924(c). (*Id.* at 2.) The Government nevertheless opposes Feliz's petition on the grounds that Feliz's Count Two conviction was predicated on both conspiracy to commit murder *and* attempted murder, and that attempted murder remains a crime of violence under Section 924(c)(3)(A) sufficient to maintain the conviction.[3] (*Id.*)

This Court agrees with the Government. Feliz's motion is therefore DENIED.

---

[3] The Government also argues that Feliz procedurally defaulted his challenge to his conviction because he never appealed it. (Opp. at 29–30.) This Court need not reach the Government's procedural arguments because, as explained below, Feliz's petition fails on the merits. *See, e.g., Abrue v. United States*, No. 16 Civ. 5052 (WHP), 2020 WL 4570338, at *2 (S.D.N.Y. Aug. 7, 2020) (collecting cases setting aside Government's procedural default arguments where petitioners' *Davis* challenges failed on the merits).

## I.    FACTUAL BACKGROUND

**A.    The Charging Instruments, Guilty Plea and Feliz's Sentence**

On May 24, 2012, the Government filed a superseding information against Feliz, charging

him with two firearms offenses.  (Superseding Information S12 09 Cr. 195 ("Information"), ECF

No. 659.)   The Information was filed with Feliz's consent and pursuant to a plea agreement

between Feliz and the Government.  Count Two of the Information, relevant here,[4] charged Feliz

with:

> "using and carrying firearms during and in relation to, and possessing firearms **in
> furtherance of, Racketeering Act One of Count One of S10 09 Cr. 195 (GBD)—**
> that is, participating in a conspiracy to murder Skeilin Camacho, a/k/a 'KK,' and
> attempting to murder Camacho on or about November 23, 2006—which firearms
> were discharged, and aiding and abetting the same, in violation of 18 U.S.C. §§
> 924(c)(1)(A)(iii) & (c)(1)(C)(i) and 2."

(*Id*. at 2 (emphasis added).)  As emphasized above, the Information referred back to a twenty-four

count indictment returned in Feliz's case on July 1, 2010.  (*Id*. (referring to Superseding Indictment

S10 09 Cr. 195 ("Indictment"), ECF No. 363).)  The statute under which Feliz was ultimately

charged in the Information, 18 U.S.C. § 924(c), outlaws use or possession of a firearm in

furtherance of, or during and in relation to, either any "crime of violence" or "drug trafficking

crime."  In this case, the Government chose to predicate Feliz's Count Two charge on a "crime of

violence," to wit, "Racketeering Act One of Count One" from the Indictment.  "Racketeering Act

One of Count One" of the Indictment, in turn, charged Feliz with three distinct acts, "any one of

which alone constitute[d] the commission of" Racketeering Act One:

> (1) participating in a conspiracy to murder a rival gang leader, Skeilin Camacho;
> (2) the attempted murder of Camacho on or about September 25, 2006; and
> (3) the attempted murder of Camacho on or about November 23, 2006.

---

[4] Feliz does not bring any challenge to his Count One conviction or sentence.

(*Id*. at 6–8.)  Although not referenced in the Information, it is significant to the resolution of Feliz's motion that the Indictment also named Feliz in two additional racketeering acts: Racketeering Act Three, which charged Feliz with participating in a conspiracy to murder another rival gang leader, Jimmy Lopez, (*id*. at 9–11), and Racketeering Act Four, a drug conspiracy, (*id*. at 11–12).

Feliz waived prosecution by indictment and pleaded guilty to Counts One and Two of the Information on May 24, 2012.  (Transcript of May 24, 2012 Change of Plea Hearing ("Plea Tr."), ECF No. 1016–1.)  Feliz's plea agreement made clear, among other things, that Feliz was "allocut[ing] fully to his guilt of the substantive racketeering offense charged in Count One of [the] Indictment . . . including to his guilt of Racketeering Acts One, Three, and Four charged in that Indictment."  (Plea Agreement at 2.)  During Feliz's plea allocution, this Court discussed with him the offenses to which he proposed to plead guilty, *i.e.*, Counts One and Two of the Information, and had Feliz's attorney assist in outlining the elements of both offenses.  (Plea Tr. 6:20–19:12.) Feliz then pleaded guilty to Counts One and Two.  (*Id.* at 16:24–17:4.)  With respect to Count Two of the Information, Feliz allocuted that he "carr[ied] a firearm in connection with a plan to kill an individual named KK [Camacho] as outlined in racketeering act one of the indictment," that "a firearm [was] discharged in the course of that plan," that that "happen[ed] in or about November 2006 . . . in Bronx County," and that the "kind of gun" he had was a "handgun."  (Plea Tr. at 16:3– 20.)  In accordance with the plea agreement, Feliz also allocuted to his participation in an attempt on Jimmy Lopez's life (Racketeering Act Three, *supra*), and to a narcotics conspiracy (Racketeering Act Four, *supra*).  (*See id*. at 17:19–19:5.)  Specifically, Feliz allocuted that he "participate[d] in an attempt to kill a rival drug dealer as alleged in racketeering act three in the indictment," and that he and others "engage[d] in drug trafficking as alleged in racketeering act four of the indictment."  (*Id.*)  With respect to the attacks on Camacho and Lopez, this Court then

4

asked Feliz, "And the two instances you described with regard to the attempted murder, those were two different individuals?" Feliz responded, "Yes, your Honor." (*Id.* 19:2–5.)

On February 14, 2013, this Court sentenced Feliz to five years' imprisonment on Count One and twenty-five years' imprisonment on Count Two. (ECF No. 711, at 1–2.)  As required by the statute, this Court directed that the two terms run consecutively, resulting in an aggregate thirty-year sentence. (*Id.* at 2); *see also* 18 U.S.C. § 924 (c)(1)(C)(i).  Feliz did not appeal his sentence. (Mot. at 5.)  On June 13, 2016, following the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015), (invaliding the residual clause of the Armed Career Criminal Act), and *Welch v. United States*, 578 U.S. 120 (2016) (holding *Johnson* retroactively applicable to cases on collateral review), Feliz filed the instant Section 2255 motion pursuant to this District's Standing Order (ECF No. 969).  Feliz supplemented his motion following the change of law effected by *Davis*.

## II.    LEGAL STANDARD

28 U.S.C. § 2255 enables a prisoner in federal custody to seek to have his sentence vacated, set aside, or corrected on the grounds that the sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).  Relief under Section 2255 is much more limited than relief under direct appeal. *See e.g., United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citing *Stone v. Powell*, 428 U.S. 465, 477 n. 10 (1976)).  This is because collateral challenges "are in tension with society's strong interest in the finality of criminal convictions." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quotation omitted).  To prevail on a Section 2255 motion, a movant must show "constitutional error, a lack of jurisdiction in the

sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation omitted).

## III.   FELIZ'S SECTION 2255 MOTION IS DENIED

Before this Court is Feliz's motion pursuant to 28 U.S.C. § 2255 to vacate his Count Two conviction and sentence in light of the Supreme Court's decision in *Davis,* 139 S. Ct. at 2236. (ECF No. 968.)  As noted above, the Government concedes that the conspiracy to murder fraction of Racketeering Act One can no longer predicate Feliz's Count Two conviction. (Opp. at 4.)  The Government contends, however, that Feliz also pleaded guilty to attempted murder, which remains a valid Section 924(c) predicate.  (*Id.* at 22–28.)  Responding to the Government, Feliz argues that "the plea colloquy makes pellucid that [he only] pleaded guilty to discharging a firearm in connection with a conspiracy," (*see* Reply in Supp. of Mot. ("Reply"), ECF No. 1023, at 9), and that, in any event, attempted murder does not meet the elements clause of Section 924 and is therefore not a "crime of violence" within the meaning of the statute, (*id.* at 11–16).

### A.    *Davis* Does Not Require Vacatur of Feliz's Count Two Conviction Because the Record Supplies Sufficient Proof Feliz Committed Multiple Attempted Murders

It is well-established that Section 924(c) "does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." *Johnson* v. *United States*, 779 F.3d 125, 129–30 (2d Cir. 2015)); *see also United States v. Rivera*, 679 F. App'x 51, 55 (2d Cir. 2017) (denying petitioner's *Johnson* claim where his plea allocution provided sufficient proof for a predicate offense that was dismissed at sentencing).  Thus, while conspiracy to commit murder can no longer support Feliz's Count Two conviction, the Government may rely on another offense (in this case, attempted murder) to predicate the conviction if the record reveals "sufficient proof" that it was committed.

Feliz concedes that the law allows for the substitution of predicates in this manner, but disagrees that the record (and more specifically, his plea) supports any finding that he committed attempted murder. (Reply at 9.)

The plea colloquy and plea agreement resolve this dispute. *See Shepard v. United States*, 544 U.S. 13, 26 (2005) (district court may rely on "the terms of the charging document, the terms of a plea agreement or transcript of colloquy" to determine whether defendant pleaded guilty to a crime of violence). Contrary to Feliz's arguments, Feliz clearly allocuted to conduct consistent with attempted murder during his guilty plea. First, although he suggests otherwise (*see* Mot. at 16–17), Feliz was specifically advised (and acknowledged) that the Count Two Section 924(c) charge to which he was pleading guilty was predicated on Racketeering Act One from the Indictment. (*See* Plea Tr. at 17:8–15.) Feliz also acknowledged that he received a copy of the Information containing the charges to which he was pleading guilty, that he reviewed those charges, and that he understood them, including those in Count Two. (*Id.* at 6:17–7:6.) Feliz then admitted to his involvement in the acts comprising Racketeering Act One. (*Id.* at 16:3–20.) This allocution included Feliz's admission that he "carr[ied] a firearm in connection with a plan to kill an individual named KK [Camacho] as outlined in racketeering act one of the indictment," that "a firearm [was] discharged in the course of that plan,"[5] that that "happen[ed] in or about November

---

[5] Feliz focuses heavily on the use of the word "plan" during the colloquy to support his claim that he pled to conspiracy to commit murder rather than attempted murder. (Reply at 5 ("Feliz admitted to 'carry[ing] a firearm in connection with a *plan* to kill …,' and agreed that a firearm was discharged 'in the course of that *plan*.'") (quoting Plea Tr. and supplying emphasis).) This argument is unpersuasive. "Plan" is not synonymous with conspiracy. While a conspiracy, by definition, is an agreement between at least two individuals, it is wholly possible for one person alone to "plan" and carry out a crime. *See e.g., Hernandez v. United States*, No. 14 Crim. 0264 (JS), 2021 WL 3426110, at *5 (E.D.N.Y. Aug. 5, 2021) (holding that petitioner's admission that he "met with other gang members to *plan* murdering" someone and then "carried out the gang's *plan*" by participating in a shooting provided legally sufficient proof that the predicate crime of attempted murder was also committed) (emphasis added).

2006 . . . in Bronx County," and that the "kind of gun" he had was a "handgun." (*Id.*) This conduct clearly describes an attempted murder.

Further, immediately following Feliz's colloquy, the Government represented that Feliz was "fully allocut[ing] to his guilt as to Count One of the predicate," (Plea Tr. 17:9–10)—which, as discussed above, comprised conspiracy to commit murder *and* two attempted murders—and Feliz did not challenge that representation. Nor did Feliz challenge this Court when it specifically referred to Feliz's conduct as attempted murder during the plea. (*See id*. 19:2–5 (Feliz responding "Yes, Your Honor" to "And the two instances you described with regard to the attempted murder, those were two different individuals?".) Finally, and not insignificantly, Feliz clearly allocuted that he had also participated in the attempted murder of another rival drug dealer, Jimmy Lopez.[6] (*See* Tr. 18:13–19 (Feliz replying "yes" when asked if he "participate[d] in an attempt to kill a rival drug dealer as alleged in racketeering act three in the indictment").) On these facts, there can be little question that Feliz engaged in multiple attempted murders and admitted to them.[7]

---

[6] That the Government did not rely on Racketeering Act Three (the attempt on Jimmy Lopez's life) in the Information is of no moment, as it is well-established that Section 924(c) "does not require the defendant to be convicted of *(or even charged with)* the predicate crime." *Johnson*, 779 F.3d at 129–30 (emphasis noted).

[7] To determine whether an underlying offense is a crime of violence, a court considers "the minimum conduct necessary for a conviction of the predicate offense" and then determine whether that minimum conduct "amounts to a crime of violence." *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018). Citing this standard, Feliz argues that, because the "minimum conduct necessary to commit Racketeering Act One … was conspiracy to commit murder," the Government cannot rely on any other predicate to sustain Feliz's conviction. (Reply at 5–6.) This argument is confused. The "minimum conduct" standard is relevant to the question whether the minimum conduct necessary to commit a particular offense (*e.g.*, attempted murder) constitutes a "crime of violence," not to the question of upon which offense (*e.g.*, conspiracy to commit murder or attempted murder) the Government may predicate a Section 924(c) charge. For similar reasons, this Court rejects Feliz's suggestion that this Court ignore the facts of the November 2006 attempt on Camacho's life in determining whether he participated in an attempted murder because "the categorical approach does not permit consideration of facts." (Reply at 10–11.) Again, courts apply the categorical approach only in deciding whether a particular offense qualifies as a crime of violence, not in determining whether a defendant actually committed that offense.

8

This conclusion is buttressed by Feliz's plea agreement and pre-sentence investigation report ("PSR"). The plea agreement makes clear that the predicate for Feliz's Count Two charge was Racketeering Act One from the Indictment, and it expressly required that Feliz allocute fully to *each* of Act One's three underlying acts, which, again, included two attempted murders of Camacho. (Plea Agreement at 1–2) (agreeing to "allocute fully to his guilt of the substantive racketeering offense charged in Count One of Indictment No. S10 09 Cr. 195 (GBD) . . . including to his guilt of Racketeering Act[] One ... charged in that Indictment."). Although not determinative of the issue, it also bears mention that the PSR's description of the attack on Camacho clearly lays out an attempted murder. (*See* PSR ¶ 80 (describing Feliz spotting Camacho on the street, arranging delivery of a gun, and, once in possession of the firearm, directing his co-defendant to shoot Camacho, which his co-defendant proceeded to do).)[8] Feliz did not contest this description of events, either in advance of sentencing or when expressly asked during those proceedings whether he had any objections to the PSR. (Transcript of Sentencing, ECF No. 720, at 2:7–13.)

The record therefore provides legally sufficient proof that Feliz committed multiple attempted murders, and, under *Johnson* and its progeny, any of them may be now used to predicate his Count Two conviction.

---

[8] Feliz argues that this conduct does not suffice to establish attempted murder as a matter of law because he did not come "dangerously near commission of the completed crime." (Reply at 7.) The cases upon which he relies, however, are not even remotely analogous because—as Feliz acknowledges in his submission— they all involve only the mere possession of a weapon, (*see id.* at 7–8), not the actual firing of a firearm with the aim to kill and ultimate wounding of the target, *i.e.*, the situation in which Feliz was indisputably involved. Feliz's argument that he only allocuted to discharging a firearm, not to discharging it specifically while aimed at Camacho or "not moments before the alleged offense," (*id.* at 9–10), is disingenuous and belied by the PSR's recitation of the incident (to which Feliz did not object), which explains that Camacho was shot and wounded as a result of Feliz's attack.

**B.**     **Attempted Murder is a "Crime of Violence" Under Section 924(c)'s Elements Clause**

Feliz secondarily argues that, should this Court find sufficient proof that he committed an attempted murder, his conviction must nonetheless be vacated because attempted murder does not necessarily involve the use of force and is therefore not a crime of violence under Section 924(c)'s elements clause.  (Reply at 11.)

Feliz is not the first defendant to make this argument, and it has been specifically considered and rejected by the Second Circuit.  *United States* v. Sierra, 782 F. App'x. 16, 20 (2d Cir. 2019) (it is "self-evident that under New York law attempted murder is a crime unmistakably involving an attempted use of physical force") (quotation omitted); *United States v. Scott*, 681 F. App'x 89, 95 (2d Cir. 2017) (summary order) ("Attempted murder in the second degree is a crime unmistakably involving 'an attempted use ... of physical force' within § 924(c)(3)(A)."); *United States v. Pastore*, 36 F.4th 423, 429 (2d Cir. 2022) ("attempted murder … is a valid predicate crime of violence under Section 924(c)); *United States v. Laurent*, 33 F.4th 63, 89 (2d Cir. 2022). No different conclusion is warranted by the possibility of attempted murder being committed by omission, a position Feliz strongly urges this Court to adopt (*see* Reply at 11–16), as the Second Circuit has recently expressly held that a defendant can apply "force" as much by omission as by commission.  *United States v. Scott*, 990 F.3d 94, 101 (2d Cir. 2021), cert. denied, 142 S. Ct. 397 (2021) (so holding and noting that "[s]ix of our sister circuits agree that crimes intentionally causing physical injury are categorically violent even if committed by omission").

In supplemental briefing, Feliz argues that the Second Circuit's rationale in the aforementioned cases has been "repudiated" by the Supreme Court's recent decision in *United*

*States v. Taylor*, 142 S. Ct. 2015 (2022).  (Supp. Letter in Supp. of Mot., ECF No. 1081.)[9]  In

*Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of

violence under Section 924(c)'s elements clause because no element of the offense requires proof

that the defendant used, attempted to use, or threatened to use force.  *Id.* at 2020–21.  This is

because a completed Hobbs Act robbery can be committed by threat, *see* 18 U.S.C. § 1951(b)

(outlawing the "taking or obtaining of personal property ... by means of ... threatened force"),

which means that a defendant may be convicted for *attempted* Hobbs Act robbery if all he does is

attempt to threaten someone.  *Id.*  Since the elements clause covers attempts to use force and threats

to use force, but not attempts to threaten the use of force, the Court held that attempted Hobbs Act

robbery falls outside the elements clause.  *Id.*

      This Court declines Feliz's invitation to extend *Taylor*'s reasoning to attempted murder.

In contrast to Hobbs Act robbery, it is not possible to commit murder by threat because murder

always requires use of force.[10]  *See e.g.*, *Sierra*, 2019 WL 3477105, at \*20.  It follows, then—as

the Second Circuit has repeatedly held, *see supra*—that attempted murder requires the attempted

use of force, which is indisputably covered by the elements clause.  As the Fourth Circuit explained

in *Taylor* itself, "where a crime of violence requires the use of physical force ... the corresponding

attempt to commit that crime necessarily involves the attempted use of force."  *United States v.*

*Taylor*, 979 F.3d 203, 209 (4th Cir. 2020), *aff'd*, 142 S. Ct. 2015 (2022).  Although the Second

---

[9] Feliz submitted additional supplemental briefing at ECF No. 1029, urging this Court to consider the Second Circuit's decision in *United States v. Scott*, 954 F.3d 74 (2d Cir. 2020), *opinion vacated on reh'g en banc*, 990 F.3d 94 (2d Cir. 2021) that first-degree manslaughter does not qualify as a violent felony under the Armed Career Criminal Act.  Following submission of Feliz's letter, that decision was vacated by the Second Circuit in *United States v. Scott*, 990 F.3d 94, 101 (2d Cir. 2021), discussed *supra*.

[10] In his motion, Feliz argues that even murder is not a crime of violence.  (Mot. at 10–13.)  The sole case upon which he relies, *Chrzanoski v. Ashcroft*, 327 F.3d 188, 195 (2d Cir. 2003), has been overruled, *see Scott*, 990 F.3d at 105, and, in any event, involved a Connecticut assault offense, not murder.

Circuit has not revisited whether attempted murder remains a "crime of violence" post-*Taylor*, the only two Circuits to have done so have both concluded that it does. *Edmond v. United States*, No. 20-1929, 2022 WL 3585638, at \*5 (6th Cir. Aug. 22, 2022); *Alvarado-Linares v. United States*, 44 F.4th 1334, 1347 (11th Cir. 2022). This Court is persuaded by their reasoning.

## IV.   CONCLUSION

Feliz's motion to vacate his sentence pursuant to 28 U.S.C. § 2255, (ECF No. 968), is DENIED and his petition is DISMISSED. The Clerk of Court is respectfully directed to close Case No. 16-cv-4449.

Dated: September 29, 2022
          New York, New York                                    SO ORDERED.

                                                                George B. Daniels
                                                                _____
                                                                GEORGE B. DANIELS
                                                                United States District Judge